(101 App. Div. 223)

### PEOPLE ex rel. ROCHESTER TELEPHONE CO. v. PRIEST et al., Tax Com'rs.

### In re POND et al., Assessors.

(Supreme Court, Appellate Division, Third Department. January 4, 1905.)

**1. TAXATION—SPECIAL FRANCHISE—REVIEW ON CERTIORARI—PARTIES.**

Tax Law (Laws 1896, p. 882, c. 908) art. 11, § 250, provides that any person aggrieved by an assessment of property may present to the court a petition for certiorari, setting forth the inequality of the assessment, "in that the assessment has been made at a higher proportionate valuation than the assessment of other property on the same roll by the same officers." Section 45, as amended by Laws 1899, p. 1592, c. 712, provides that an assessment of a special franchise by the State Board of Tax Commissioners "may be reviewed in the manner provided by article 11," and that the writ of certiorari "must run to and be answered by the said State Board of Tax Commissioners, and no writ of certiorari to review any assessment of a special franchise shall run to any other board or officers unless otherwise directed by the court or judge granting the writ. An adjudication made in the certiorari proceedings shall be binding on the local assessors and any ministerial officer who performs any duty in the collection of said assessment in the same manner as though said local assessors or officers had been made parties to the proceeding." *Held* that, in certiorari to review the assessment of a special franchise, the board of assessors of the city may be made parties defendant by order of the court or judge allowing the writ.

**2. SAME—ORDER FOR CERTIORARI—AMENDMENT.**

The order granting the writ of certiorari to the State Board of Tax Commissioners may be subsequently amended so as to be directed also to the local board of assessors.

3. SAME—WHO MAY APPLY TO BE MADE PARTIES.
    The writ may be directed to the local board of assessors on the applica-
tion of such local board.
    Parker, P. J., dissenting.

Appeal from Special Term, Albany County.

In certiorari proceedings, on the relation of the Rochester Tele-
phone Company, against George E. Priest and others, State Tax Com-
missioners, to review the assessment of a special franchise, Charles F.
Pond and others, assessors of the city of Rochester, applied to be made
defendants. From an order granting the petition, relator appeals.
Modified.

This proceeding is upon a writ of certiorari issued by Justice Dunwell, of
the Supreme Court, to review relator's assessment for a special franchise by
the State Board of Tax Commissioners. The writ was directed to the said
board, which made answer thereto. The relator's challenge is threefold—of
the constitutionality of the act under which the assessment was made, of over-
valuation by the state board, and of inequality, in that the property of the
relator was assessed by the state board at full value, while the property upon
the local assessment roll was assessed at only 70 per cent. of its value. At
the hearing before the Special Term the relator offered evidence by which
it claimed to have made proof that the property upon the local assessment roll
of the city of Rochester was assessed at 80 per cent. only of its real value. To
this no counterproof was offered by the state board. While the matter was
still undetermined, however, the corporation counsel of the city of Rochester
made application that the city and the local board of assessors be made
parties defendant to the proceeding, to the end that they might contest the
allegation of the relator's petition that the assessment was unequal. Upon
this application an order was made making the city of Rochester a party de-
fendant. From that order an appeal was taken to this court, and the order
was reversed upon the ground that the statute did not authorize the bringing
in of the city of Rochester. 95 App. Div. 44, 88 N. Y. Supp. 11. Thereafter
the assessors of the city of Rochester made application to be made parties
defendant, and upon that application the Special Term made an order mak-
ing said assessors parties defendant in the proceeding, and authorizing them,
as such defendants, to file a return with the same force and effect as if they
had been made parties defendant at the time of the commencement of the pro-
ceeding. The order further provided that the said defendants might by their
return raise the issue whether the State Board of Tax Commissioners had,
in the assessment complained of, assessed the special franchise of the relator
at its full and true value, or at a sum less than its full and true value, and
the said assessors were given permission upon the hearing to introduce upon
such issue such legal evidence as they might be advised was relevant and
proper. Further provisions were made in said order as to costs of the pro-
ceeding. From this order the relator has here appealed.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER,
and HOUGHTON, JJ.

Saterlee, Bissell, Taylor & French (Charles J. Bissell, of counsel),
for appellant.

William W. Webb, for Charles F. Pond.

John Cunneen, Atty. Gen., for George E. Priest et al.

SMITH, J. By section 250 of the tax law (chapter 908, p. 882,
Laws 1896), any person upon an assessment roll, claiming to be ag-
grieved by an assessment for property therein, may present to the court
a verified petition setting forth, among other things, the inequality of
the assessment, "in that the assessment has been made at a higher

proportionate valuation than the assessment of other property on the same roll by the same officers."

By section 42 (Laws 1899, p. 1590, c. 712) of the same law it is provided that the State Board of Tax Commissioners shall annually fix and determine the valuation of each special franchise subject to assessment. It is further provided:

"The valuations of every special franchise as so fixed by the state board shall be entered by the assessors or other officers in the proper column of the assessment roll before the final revision and certification of such roll by them, and become part thereof with the same force and effect as if such assessment had been originally made by such assessor or other officer."

By section 45, an assessment of a special franchise by the State Board of Tax Commissioners—

"May be reviewed in the manner prescribed by article eleven of this chapter, and that article applies so far as practicable to such an assessment in the same manner and with the same force and effect as if the assessment had been made by local assessors; a petition for a writ of certiorari to review the assessment must be presented within fifteen days after the completion and filing of the assessment roll, and the first posting or publication of the notice thereof as required by law. Such writ must run to and be answered by said State Board of Tax Commissioners and no writ of certiorari to review any assessment of a special franchise shall run to any other board or officer unless otherwise directed by the court or judge granting the writ. An adjudication made in the proceeding instituted by such writ of certiorari shall be binding upon the local assessors and any ministerial officer who performs any duty in the collection of said assessment in the same manner as though said local assessors or officers had been parties to the proceeding."

Article 11, referred to in this act, includes section 250, before quoted. The provisions of section 45 of the tax law, above quoted, would seem to give full warrant for directing the issuance of this writ to the board of assessors of the city of Rochester. The criticism that the order, instead of directing the issuance of the writ to the board, has made the members of the board parties defendant, goes to the form, and not to the substance, of the order. There is no provision in the statute that the direction of the issuance of the writ to another board should be made in the original order directing the writ. I assume, therefore, whenever it shall appear in the proceeding that the presence of any other board than the State Board of Tax Commissioners is necessary or advisable, the writ may be directed to be issued to such board, either by the court or by the judge who granted the original writ. Nor is there any specification of the statute upon whose application this writ should be directed to any other board. Without such specification, the order would seem to be properly made at the instance of any party to the proceeding, or of the local board whose judgment is assailed by the charge of inequality, or even of the court itself.

If, then, under section 45 of the tax law, this assessment is subject to review with like force and effect as if it were an assessment by the local assessors upon the local roll, the relator can properly challenge the assessment for inequality. If this inference be otherwise a doubtful one, it is confirmed by the fact that the writ may be directed to run to some other board. It is difficult to conceive what board other than the local board of assessors could have been in the mind of the Legislature in the framing of this provision of the statute, or of any

reason for the issuance of the writ to such local board, except upon a challenge of the assessment as unequal. Permission to make such challenge is given not only by the letter of the statute, but is entirely consonant with the policy of our tax laws. The first requirement of a just system of taxation is equality. It cannot matter whether property be assessed at 100 per cent. of its value, at 75, or at 50, if it all be assessed at the same percentage of value. In any case, if proportionately assessed, each piece of property will bear its just proportion of taxation. The rule requiring assessors to assess at full value is therefore simply a rule of uniformity. The cardinal principle to be followed is equality of taxation, which must rest upon proportionate valuations in assessments. Our attention has been called to the case of Mercantile Bank v. Mayor, 172 N. Y. 35, 64 N. E. 756. In that case it was held that under the consolidation act, governing the review of assessments in the city of New York, an assessment for personal property could not be reviewed as unequal, in that it was made at a greater valuation than was the assessment of real estate in that city. It was further held that, notwithstanding the failure of the statute to authorize a review on that ground, nevertheless equity had jurisdiction to correct the assessment, if unjust, but that such injustice did not exist merely by reason of inequality with the assessment of another class of property. The assessment there sought to be corrected was of bank stock. At page 46, 172 N. Y., page 760, 64 N. E., the opinion reads:

"Underlying the governmental power of taxation for the raising of revenues is the principle that taxation should be equal, in the sense that there shall be no discrimination against persons, nor any classification which results in discrimination, and that the common burden shall be sustained by common contributions, regulated by some fixed, general rule, which operates impartially. Is this a case where that principle has been violated? I think not. A general statutory rule has been disregarded by the assessors, in the exercise, presumably, of an honest and reasonable judgment, as nothing is charged to the contrary; but their action was impartial and with reference to the whole community. What discrimination was exercised was solely as to the basis of valuation for each of the two classes of property into which all of the property of the community was divided. That there may be a different basis of valuation in the assessment of real estate from that in the cases of personal estate is, indeed, intimated by the Legislature in the statutory provision above cited from, and also in that relating to the taxation of the capital stock of corporations, that their real estate shall be deducted at its assessed value. Chapter 409, p. 701, Laws 1882, § 312; Tax Law 1896, p. 799, c. 908, § 12. I think we may fairly assume that the assessors were influenced by the consideration that an assessment of personal estate is subject to a deduction for the debts of its owner, while real estate is not, and that the latter form of property bears the greater proportion of taxes, for the reason that, unlike personal estate, it cannot be concealed. It is a fact of common knowledge and discussion that a disproportionate share of the public burdens is thrown on certain kinds of property, because they are visible and tangible, while others are of a nature to elude vigilance. Commonwealth v. P. F. C. S. Bank, 5 Allen, 428, 436. Such considerations may well influence a board of assessing officers to assess real estate upon a different basis of valuation, in order to equalize the burdens of taxation. Equality is unattainable, and can never be but approximate."

But the franchise here taxed is by the statute deemed real estate. Its assessment is asked to be made equal with the assessment of other real estate upon the same roll. Like the assessment of real estate, to its valuation no offset can be made. Nor is it a class of property, a part

of which can be concealed. None of the reasons which justify the re-
fusal of the state to allow the assessment of personal property to be
reduced as unequal can apply to this class of property. To hold that
the assessment of this property cannot be equalized would be to read
into the statute an exception not therein written, as against the well-
established legal rule that every presumption of law is in favor of the
taxpayer, while the injustice to the taxpayer must be conceded.

If the right of the local board to be brought into the proceeding by
an order that the writ should be issued to the members thereof be found,
and if the right of the relator to question its assessment for inequality
be granted, we reach the question of the relative rights of the state
board and the local board in defending the writ. It is probably true
that this question was not necessarily before the Special Term, and
is not necessarily here. We might rest this appeal upon a determina-
tion as to the right of the local assessors to be made parties to the pro-
ceeding, without discussing the extent of their right in defending the
writ. The question, however, is a public one of large importance,
which the Special Term has assumed to pass upon. In view of the
importance of the question, and of its early determination, we think
it is proper that we should express our opinion thereon at this time.

By section 45 of the tax law this writ of certiorari is required "to
run to and be answered by the said State Board of Tax Commissioners."
The same section further provides: "No writ of certiorari to review
any assessment of a special franchise shall run to any other board or
officer unless directed by the court or judge granting the writ." While
ordinarily a public board exercising judicial functions has no interest
to protect its own determinations, it seems to have been generally rec-
ognized that a board of assessors, upon challenge of its assessment, has
the right and duty to answer such challenge, and to establish the
validity and equality of those assessments. People v. Dederick, 161
N. Y. 195, 55 N. E. 927; People ex rel. Met. St. Ry. Co. v. Tax Com.,
174 N. Y. 417, 67 N. E. 69, 63 L. R. A. 884.

It is argued that the only province of the state board in defending
this writ is to show that its assessment was regular and valid, and
that such board has no authority to make proof that the assessment of
the local board was at full value, in answer to the relator's charge of
inequality. If this be true, and the writ be not directed to the local
board, the claim of inequality made by the relator must prevail as up-
on default. If the local board only can defend a challenge for in-
equality, it would seem that it would by the statute have been made a
necessary party to the writ wherever the charge of inequality was made.
Nothing, however, is found in the statute which indicates that in any
instance is the local board a necessary party to the writ. The contrary
intendment is indicated. The direction to the state board to answer
the writ is a direction to make full answer. The inevitable legal in-
ference from this statutory requirement is that such state board not only
must answer fully, but may support the answer which it serves with
appropriate proofs.

While recognizing the right and duty of the state board to make
full defense to the writ, whatsoever may be the challenge made, where
the assessment is charged to be unequal, in that the assessments upon

the local roll are at less than full value, it is appropriate that the members of the local board be made parties to the proceeding by the issuance of the writ to them also. Their assessment of the local property has been made for reasons known to them only upon evidence which was before them. They are undoubtedly the best qualified to defend those assessments as properly made at the full value. Where the state board is of opinion that the local assessments were made at a percentage only of real value, the presence of the local assessors is the more important, that they may prove the contrary fact, to the end that the relator may not be unjustly relieved of a portion of the tax which it should lawfully pay. The right of the local assessors, when made parties to the writ, to make answer thereto that the relator's assessment was not unequal because of undervaluation of the assessment upon the local roll, would seem to be undoubted. Such right would seem to be a necessary sequence of the issuance of the writ to them.

The order in the case at bar, however, goes further than this, and authorizes the local board to show in defense of the relator's application that, even though the assessments upon the local roll were at a percentage only of the real value of the property assessed, nevertheless the relator's assessment by the state board was at no greater percentage, and therefore was not unequal. The relator contends that it was not the intention of the Legislature to give this right to the local assessors. This denial raises probably the most important question for determination upon this appeal.

In determining whether this right exists in the local assessors, it is important to consider the practical effect of the granting of such right. The local assessors would in such case be put in the position of attacking the action of another public board by allegation and proof that its assessment was not made as directed by law. The natural impulse of the state board, also a party to the proceeding, would be to defend its assessment. There would then be presented to the court the unseemly spectacle of a contest between two public boards, the one striving to impeach and the other to sustain the action of one of them, while the relator might sit by an interested spectator only of the contest. Such legislation would be not only unprecedented, but would be anomalous. Again, the assessment of franchises was by the statute given to the State Board of Tax Commissioners because of the impracticability of their assessment by the local boards, both through lack of experience in such matters, and the impossibility of their securing the proper data upon which they should be based. In People ex rel. Met. St. Ry. Co. v. Tax Commissioners, 174 N. Y. 437, 67 N. E. 73, 63 L. R. A. 884, Judge Vann, in discussing this law and the reason for the assignment of this function to the state board, says:

"It [the Legislature] found that the valuation of this new kind of property, intangible, invisible, and illusive, but of great value, would be attended with peculiar difficulties, which would require a degree of knowledge and skill not possessed by local assessors, but belonging only to experts who had long and carefully studied the subject of taxation in all its varied aspects. The problem was to place a just and adequate value upon a right capable of valuation, but which was unseen, without form or substance, and, as it were, the mere breath of the Legislature. * * * The system thus created had never been known before, and, as its main subject, the act dealt with special fran-

·chises, which had never been taxed before. Property unknown as the subject of taxation to the framers of any of our Constitutions was brought into the system, which required new methods of valuation, and the exercise of functions which had never belonged to local assessors. The property was ·sui generis, and from its nature could not be valued by local officers."

It will be seen, therefore, if in defending this writ the local assessors may prove the relator's assessment to have been undervalued by the state board, that, while the Legislature has denied to the local board the right to make the original assessment because local assessors were incapable of making the same, nevertheless in the same statute they have been given the right to allege and prove that such assessment was incorrect in defending a challenge for inequality. How are they any more qualified to allege and prove such undervaluation than to make the original assessment? A statute so interpreted would clearly be incongruous and inconsistent. Against such an interpretation the law will, in my judgment, conclusively presume.

Respondent argues that because the state board is, under the statute, allowed to make full defense of the writ, the local board, when made a party to the proceeding, should have the same right. But the state board, in defending their assessment against the charge of inequality, offers proof to sustain the valuations of the local board, while the defense of the local board would go to impeach the valuations ·of the state board in their effort to prove that the valuations of the state board were at no greater percentage than their own. To hold that the state board may defend against the charge of inequality by offering proof to sustain the assessment of the local board as at full value is quite different from holding that the local board, when admit- ·ted to the proceeding, may make such defense by impeaching the assessment of the franchises by the state board. Moreover the members ·of the state board are members of the State Board of Equalization, to which is assigned by law the duty of equalizing between the several ·counties the state taxes. In exercising this function they become possessed of a general knowledge of the percentage of value at which property is assessed in different localities of the state. On the other hand, members of the local board have and can have no knowledge of the fairness of a valuation of a franchise made by the state board. Respondent further argues that it is not natural to suppose that the state board, in defense of the charge of inequality, will concede or show that its own assessment was at less than full value, and that, unless such defense be permitted by the local board, the relator may secure a reduction in the assessment to which it is not fairly entitled. Such a possibility, however, cannot change the rule of law. The law is jealous to protect each individual taxpayer, that he shall not be overassessed. The law is not so jealous to protect the public. It furnishes no remedy to the public for an assessment at part only of full value. The injury to the public is deemed so minute that the law will not ·take cognizance of the fact that the individual has not paid his full share of the tax. In no instance does the law permit an assessment, when finally made by the board of assessors, to be increased. In this respect the public interest has been intrusted to the protection of the state board, and with the legal presumption that that board will ·do its full duty.

Under the interpretation of the statute here indicated, a mass of litigation is precipitated upon the court. It is doubtful if there is a single county in which, upon the judgment of the state board, the property upon the local roll is assessed at full value. Every corporation assessed for a special franchise must proceed by certiorari to equalize its assessment. To that certiorari proceeding the local board in each instance will probably be admitted. To justify the oath attached to the local rolls, it will defend the writ. Hundreds if not thousands of contested proceedings are thus made necessary, and the court is in fact made in the first instance an equalizing board to equalize the assessment of the special franchise with the assessment of other real estate upon the roll. Not only will this mass of litigation embarrass the courts, but it will also greatly hinder the orderly execution of the law in the collection of taxes. While these considerations should not lead to a construction which would deny to a relator the right to an equal and just assessment, the Legislature might well consider whether, upon the appeal to the state board by a corporation assessed for a special franchise, power should not be given to that board to equalize the assessment with the assessment of other real estate in the tax district in which the corporation is taxed. The general information possessed by the state board of values in the different localities would seem to give to that board special qualifications for such a task. Moreover, such a task is more in the nature of an administrative than a judicial function, and the proposition is not without authority that such an administrative function cannot constitutionally be given to the court.

While entertaining these views, I am of opinion that it is not the province of this order directing the issuance of the writ to the local assessors to define what shall be their rights thereunder. The order should be modified, therefore, so as to direct that the writ granted herein on the 6th day of May, 1903, be amended by directing it to run to Charles F. Pond, Joseph C. Wilson, Frank Fritchie, and Charles H. Judson, as assessors of the city of Rochester, as well as to the State Board of Tax Commissioners, commanding the assessors of the city of Rochester to return their proceedings with respect to the assessment of real property in said city with the same force and effect as if the writ had originally been directed to them.

Order modified by substituting therefor an order directing that the writ granted herein on the 6th day of May, 1903, be amended by directing that it run to Charles F. Pond, Joseph C. Wilson, Frank Fritchie, and Charles H. Judson, as the board of assessors of the city of Rochester, as well as to the State Board of Tax Commissioners, commanding said board of assessors of the city of Rochester to return their proceedings with respect to the assessment of real property in said city with the same force and effect as if the writ had originally been directed to them.

HOUGHTON, J., concurs.   CHESTER, J., votes for affirmance.

CHASE, J. (concurring). By the express terms of the tax law (chapter 908, p. 795, Laws of 1896, and subsequent amendments), local assessors are required to assess real and taxable personal property at its

full value. Sections 21, 37, Id. The State Board of Tax Commissioners are required to "fix and determine the valuation of each special franchise subject to assessment in each city, town or tax district." Section 42, Laws 1899, p. 1590, c. 712. The value of such special franchise is to be fixed and determined, and the intention of the statute is that such board shall fix and determine the full value thereof. The time provided for the annual valuation of special franchises is prior to the time provided for making assessments by local assessors, and the determination of the State Board of Tax Commissioners should not be affected in any way by what they assume or believe to have been the basis of valuation of prior assessments made by local assessors, or by what they assume or believe will be the basis of valuation of such assessments for the current year. If, therefore, the several boards of local assessors and the State Board of Tax Commissioners perform their duty as provided by the statute, there will be relative equality of assessments upon all classes of property. Each board is presumed to have performed its duty. People ex rel. M. R. Co. v. Barker, 146 N. Y. 304, 40 N. E. 996. Provision is made in the tax law, however, for the correction of errors by a review of the action of local assessors and of the State Board of Tax Commissioners, and the review so provided is exclusive of the common-law remedy by certiorari and of other remedies. People ex rel. Rochester Telephone Co. v. Priest, 95 App. Div. 44, 88 N. Y. Supp. 11; People ex rel. Thompson v. Feitner, 168 N. Y. 441, 61 N. E. 763; Mercantile Nat. Bank v. Mayor, etc., 172 N. Y. 35, 64 N. E. 756. We must look to the tax law, therefore, to ascertain not only the purpose for which a writ of certiorari should be issued, but to ascertain what authority is given to, or duty imposed upon, the several boards or officers to whom the writ is directed, in regard to the hearing, and also the extent of the remedy to be obtained by the writ. By section 250 of the tax law, any person assessed upon any assessment roll, claiming to be aggrieved, may present to the Supreme Court a petition setting forth that the assessment is illegal, erroneous by reason of overvaluation, "or if unequal in that the assessment has been made at a higher proportionate valuation than the assessment of other property, on the same roll by the same officers, specifying the instances in which such inequality exists and the extent thereof." On such petition a writ of certiorari may be allowed to the officers making the assessment to review such assessment. A return to the writ "must be made and served upon the relator's attorney" by the officers making the assessment. Section 251, Id.

The determination of the court is made after a hearing at which testimony necessary for such determination can be taken, and the determination of the court has the same force and effect as if it had been made by the proper assessing officers within the time prescribed by law for making such assessments. In reviewing the action of local assessors, there is no provision of the statute permitting the writ to run to any other board, officer, or person. The interest of the public at large is intrusted to the assessors, and other persons assessed on the same roll by the same officers, although personally interested in the result, cannot become parties to the proceeding. Similar statutory authority existed for reviewing assessments made by local assessors be-

fore the said tax law was enacted (chapter 269, p. 402, Laws 1880), and sections 250 to 256, inclusive, of the tax law, were not changed when sections 42 to 47, inclusive, of the tax law, were added by chapter 712, pp. 1590-1594, of the Laws of 1899. By section 45 of the tax law, as so added, and as it exists at the present time, it is provided that an assessment of the special franchise by the State Board of Tax Commissioners may be reviewed in the manner prescribed by article 11 of said tax law, and that such article applies, so far as practicable, with the same force and effect as if the assessment had been made by local assessors. Sections 250 to 256, inclusive, of the tax law, are included in said article 11. By said section 45 it is provided:

"Such writ must run to and be answered by said State Board of Tax Commissioners, and no writ of certiorari to review any assessment of a special franchise shall run to any other board or officer unless otherwise directed by the court or judge granting the writ."

An adjudication in such proceeding is binding upon local assessors and any ministerial officer who performs any duty in the collection of said assessment in the same manner as though said local assessors or officers had been parties to the proceeding. That the writ which runs to the State Board of Tax Commissioners may also run to any other board or officer, when so directed by the court or judge granting the writ, seems to be within the plain language of the statute itself. Just what relief may be obtained through a writ of certiorari obtained pursuant to said section 45 of the tax law, and just what authority the State Board of Tax Commissioners, and any other board or officer to whom the writ shall run, has on the trial of the proceeding, is not so clearly expressed. When said section 42 was added by chapter 712, p. 1590, of the Laws of 1899, it did not contain the provision that the valuation of special franchises fixed by the state board, when entered by the assessors or other officers in the assessment roll, should become part thereof "with the same force and effect as if such assessment had been originally made by such assessor or other officer." By chapter 254, p. 510, of the Laws of 1900, said section 42 of the tax law was amended, in which amendment it is provided:

"The valuations of every special franchise as so fixed by the state board shall be entered by the assessors or other officers in the proper column of the assessment roll before the final revision and certification of such roll by them and become part thereof, with the same force and effect as if such assessment had been originally made by such assessor or other officer."

From a reading of these statutes, it is clear that a review of the assessment of the local assessors in comparison with the assessments of the State Board of Tax Commissioners cannot be had on a writ to review the assessment of a special franchise, unless the said provision of section 42, as amended by chapter 254, p. 510, of the Laws of 1900, providing that the valuation of a special franchise, when placed upon the assessment roll of the local assessors, shall "become part thereof with the same force and effect as if such assessment had been originally made by such assessor or other officer," is construed to make the special franchise assessment on the same roll, and made "by the same officers," within the meaning of said section 250 of the tax law. The assessment of special franchises by the State Board of Tax Commissioners, when

entered on the local assessment roll, has the same force and effect as if the assessment had been made by local assessors, so far as the apportionment and collection of taxes is concerned; but I have grave doubt whether it was the intention of the Legislature by such language to provide that the assessment of the special franchises should be considered as "upon the same roll by the same officers," for the purpose of reviewing the relative value of property assessed by different officers. If it was the intention of the Legislature to construe the assessment of special franchises as made by the same officers as local assessments for the purpose of reviewing the assessment by certiorari, it will be claimed that a person assessed in a local tax district may, by a petition alleging that the local assessors have assessed the real property of the petitioner and that of all other owners of real property within the tax district at its full value, and that the State Board of Tax Commissioners have assessed the special franchises in the tax districts at an amount less than their full value, obtain a writ by which all the assessments then on the roll, including those of special franchises, can be reviewed to ascertain whether the assessments are relatively equal. If a writ can be obtained under section 250 of the tax law for such purpose, a hearing would be had without the presence of the State Board of Tax Commissioners, for concededly the writ, under that section, can only run to the local assessors.

Special franchises are held to be a new character of property. People ex rel. M. S. R. Co. v. Tax Com., 174 N. Y. 417, 67 N. E. 69, 63 L. R. A. 884. The Court of Appeals have said, in referring to a case where personal property was taxed at a different ratio of valuation from that of real property:

"There is no complaint of inequality in the assessment of the taxable personal estate. It is that the taxable real estate is assessed at a different ratio of valuation from that adopted as to personal estate. I do not think that this is an inequality which can constitute a legal grievance, as would be the case if there had been an unequal valuation of property of the same class." Mercantile Nat'l Bank v. Mayor, etc., 172 N. Y. 35–46, 64 N. E. 756.

If it was the intention of the Legislature, on a review of a special franchise assessment by writ of certiorari, to determine whether the two assessing boards had made their assessments with relative equality, it should have been expressed in the statute in plain terms. So far as I am aware, the question of the authority of the court, under the tax law, to review and change individual assessments made by different boards in the same tax district, by reason of relative equality, has never been considered, where the authority of the court has been seriously disputed. In the case of People ex rel. M. St. Ry. Co. v. Tax Com., supra, a reduction of the special franchise assessment was directed by Ex-Judge Earl, as referee, to conform the basis of the assessments of the special franchises to that found to have been adopted by the local assessors; and the opinion of Judge Earl was generally approved by the Court of Appeals, without a discussion of the question here involved. Similar adjudications have been made in other cases at Special Term. In view of the precedents thus established, I will, until a contrary decision by the Court of Appeals, assume that the court has authority by writ of certiorari to correct assessments for the purpose of making

such assessments relatively equal. Assessing officers are authorized to defend assessments made by them. They are an exception to the general rule that boards exercising judicial functions cannot be heard in defense of their determinations. Assessing officers have, without exception, been heard in defense of their assessments, and the great body of persons assessed are compelled to rely upon the boards or officers making assessments defending their assessment whenever challenged. The right of local assessors to defend their assessments after a return to a writ issued to them as provided in section 250 of the tax law, and the right of said board of tax commissioners to defend their assessments after a return to a writ issued to them pursuant to section 45 of the tax law, are conceded. If, in addition to defending their assessments, each board assessing property in the same tax district is allowed to attack the work of the other board, the local assessors will be compelled to seek evidence as to a class of property not left to such board for valuation, and the state board will be compelled to seek evidence as to property in particular tax districts in every part of the state; making a burden that will seriously complicate the practical work of the assessing officers. The impracticability of enforcing the special franchise law has been urged from the time of its enactment, and the court should not increase the complications arising out of its enforcement by straining the language of the sections relating to a review of the assessment so as to allow either board to litigate questions other than such as are in defense of their own assessments. As we have seen, it is the duty of the State Board of Tax Commissioners to assess the special franchises at their full value. A defense of their assessments, when challenged, only extends to the presentation of evidence relating to the value and relative value of the several franchises assessed by them. So the duty of the local assessors in the defense of their assessments, when challenged, only extends to presenting evidence relating to the value and relative value of the property so assessed by them. The defense of their assessments, respectively, does not in any way extend to a consideration of work performed by another and independent board. I am not aware that an assessing board has ever been allowed to litigate questions upon a return to a writ of certiorari other than such as relate to the legality of the assessment, or the value or relative value of the property assessed by it. Under the tax law, each board to which the writ runs is bound to answer it, but there is nothing in such law requiring that the bounds of the authority of either board in litigating the questions involved shall be extended beyond the practice in such cases as long established. On a proper petition for a writ of certiorari against the State Board of Tax Commissioners, the writ must be granted. Mercantile Nat. Bank v. Mayor, supra. When by the petition it appears that a comparison of the assessments of the two assessing boards is desired, the provision of section 45 of the tax law, by which the court may let the writ run to another board or officer, should be deemed mandatory; and no relief arising from inequality of assessment as between the two assessing boards should be granted unless the writ runs to the local board of assessors, as well as to the State Board of Tax Commissioners, and such local board are given an opportunity to defend their assessment so challenged. So

if a person assessed upon any assessment roll makes application for a writ of certiorari against the local board of assessors, by which petition it appears that a comparison of the assessments of the two assessing boards is desired, the court should compel such petitioner to raise the question, if at all, by a writ running to the State Board of Tax Commissioners under said section 45, where such State Board of Tax Commissioners, as well as the local board of assessors, can have an opportunity to defend their assessments so challenged. If the tax law is so construed, and the State Board of Tax Commissioners, as well as the local board of assessors, are confined in the proceeding to a defense of the assessments made by them, respectively, all interests will be fully protected, and the possibility of having a workable system in the review of assessments will be largely increased. I see no reason for granting to the State Board of Tax Commissioners greater authority for the presentation of evidence in the proceeding than is granted to local assessing boards, when they are properly before the court in answer to a writ running to them. Each board will be presumed to be more competent to defend the assessments made by it than any other board or person. The unseemly spectacle of two bodies of public officers, each challenging in court the work of the other, would be but slightly less unseemly if the State Board of Tax Commissioners are allowed to attack the work of the local assessors in an attempt to show that they had performed their duty as faithfully as the local board of assessors, and the local board of assessors were denied the right to attack the work of the State Board of Tax Commissioners for a like purpose.

I concur in the modification of the order suggested by Justice SMITH. The question of the rights and duties of the respective boards after a return to the writ will not be fixed and determined by the amended order.

PARKER, P. J. (dissenting). I cannot concur with the conclusion reached in this case. In my judgment the act in question does not authorize the relator to ask for a correction of the assessment of its franchise on the ground that it has been made at a higher proportionate valuation than that at which the local assessors have assessed the property on their roll. Such an equalization between the work of the different boards is not given by this statute, and, inasmuch as all the other questions raised by this writ have been decided against the relator, the writ should be dismissed.

Section 250 of the tax law of 1896 (Laws 1896, p. 882, c. 908) is the only one which specifies the grounds upon which a review of any assessment may be had by certiorari. As to the first and second grounds therein specified, the court has decided against this relator in this case. As to the third and only other ground therein specified, the inequality which is the basis of the alleged grievance must arise from an unequal valuation of property assessed "upon the same roll, and by the same officers." In this case comparison is made between the valuation of the relator's special franchise assessed by the state officers, and that of the real estate in the city, assessed entirely by the board of local assessors. Inequality in such valuations is very clearly not included in the third

ground for which a review may be had. This plain exclusion from review by certiorari of an assessment made by one board with that made by the other board, it is claimed, has been entirely modified by the provisions of sections 42 and 45 of the tax law of 1899 (Laws 1899, pp. 1590, 1592, c. 712). I can discover nothing in either of such sections that assumes to change the grounds for which a certiorari may be issued to review an assessment, or that indicates a purpose to strike out, under any circumstances, from section 250, the words "upon the same roll and by the same officers." The assessment of a franchise made by the state board may be given the "same force and effect" after being certified to the local board and placed upon its roll as if made by the latter board, but that by no means changes the fact that it had been actually assessed by the state board, nor indicates an intent to strike out from section 250 the phrase above quoted. Moreover, the whole structure of the act indicates that it was enacted without reference to any remedy for inequality of assessment by the two boards. Thus, in the case before us, section 250 provides that the petition for certiorari "shall show that application has been made in due time to the proper officers to correct the assessment." The proper time to complain of an assessment of this franchise was February 18th. Such was the day advertised by the state board for correcting their assessment of this franchise. But the relator could not then know of the inequality now complained of, because the local board had not then made its assessment, and thus it is apparent that the Legislature had no expectation that a petition would ever be used which asked for relief because of such an inequality.

If it be considered that the local board were the proper officers to apply to for a correction of such assessment, it is apparent that such application would be a mere idle ceremony. The local board could on "grievance day" change an assessment made by themselves so that it would be equal with other assessments made by them, but it is hardly to be expected that the Legislature intended to permit the local board, upon such an application, to practically reassess the franchise on the theory that it had been assessed by the state board at a higher proportionate valuation than the local board had assessed. The franchise has been held to be a kind of property peculiar to itself, and of which the local board is unfitted to value and assess. Hence the constitutionality of the law creating a state board to assess it. People ex rel. Met. St. Ry. Co. v. Tax Com'rs, 174 N. Y. 417, 67 N. E. 69, 63 L. R. A. 884. In no point of view is the requirement that the petitioner must first apply to the proper officers for a correction of its assessment before suing out the writ consistent with the idea that it may have such writ to review an inequality arising from the action of both boards. It is incredible that the Legislature intended that in any case either board might review the action of the other. So, also, it is clear that no method can be discovered in this act for granting relief against inequalities arising from a comparison of the assessments of the two boards that will not present the unseemly spectacle of two public boards at variance over the question which board is responsible for the error charged in the petition.

This question, although it has been indirectly presented and assumed in several decisions in the lower courts, has never, so far as I can ascertain, been passed upon by any court which is controlling upon us. In the case above cited, although the referee assumed that such an inequality was ground for review by the certiorari issued in that case, and gave relief based thereon, yet neither this court nor the Court of Appeals expressed any opinion or gave any judgment thereon. The people did not appeal, and so that question was not presented to either of the appellate courts. Upon this appeal the question is squarely before us, and I am of the opinion that we should now decide it in the manner above stated.

If, however, an inequality in the ratio of valuation by the two boards is to be deemed a good ground for a certiorari under the law as it now is, in my judgment the inquiry necessary to determine that question calls for a review of the work of each board; and so the relator who seeks relief upon that ground must take out his writ of certiorari to both boards. Thus in the case at bar this relator complains in its petition not only that the assessment of its franchise by the state board was illegal, and that it was overvalued, but that it was unequal, in that it was valued at its par value, while the real estate generally throughout the city was valued by the local board at not over 80 per cent. of its actual value. Necessarily, to determine the truth of this last proposition, a writ of certiorari must be issued to the state board. It is their assessment that is sought to be changed and corrected; hence that board must necessarily be before the court. But manifestly such board is not the only one whose work is to be reviewed under such a complaint. The work of the local board must also be inquired into, because the charge is that, owing to the fact that it has assessed the real estate 20 per cent. below its actual value, the unjust inequality complained of has arisen. Therefore this relator "conceives himself aggrieved" by reason of the action of the local board in assessing the property within its jurisdiction at a figure lower than the law allows, to wit, at less than its actual value. Therefore, under the provisions of sections 250 and 251 of the tax law, it should also procure a certiorari against the local board. In other words, the relator complains of the action of both boards, and therefore must review the action of both, and so it should sue out its writ against both boards.

This is apparent by noticing the practical operation of the case before us. One writ is issued to the state board alone. That board makes a return full and complete as to all its own proceedings, and it appears from it that it had valued the relator's franchise at its just and correct par value. But as to the charge in the relator's petition that the local board had assessed the property within its jurisdiction at 80 per cent. only of its actual value, the state board returns that it knows nothing about it. And naturally such must be its return. It has no part in making that assessment, no duty concerning it. All the state board's work in the city is finished before the local board's work of assessment is begun. Hence it is beyond the knowledge of the state board either to affirm or deny the truth of such charge. Clearly the return of the state board can give the court no information upon that subject, and it is not its duty to attempt to do so, or to raise any issue with the relator

upon that subject. And therefore it has not done so in this case. But this leaves the subject-matter of the relator's complaint only half presented to the court. Has the local board assessed at only 80 per cent., or at any figure less than 100 per cent.? If it has, then the inequality of which the relator complains exists. If it has not, then the relator's assessment should not be changed. Manifestly the return of the local board alone can give the court information on that subject. Clearly it alone can raise an issue over that charge.

Therefore, if the relator would obtain relief from the court by reason of this alleged inequality, it was its duty to procure this writ of certiorari to be issued against both of the boards, to the end that a return be made which could cover the whole work of which complaint is made, and inform the court of the whole proceeding to be reviewed. Then the real issues, if any exist, are defined, and the court can direct such evidence to be taken as it shall find necessary.

In short, I am of the opinion that, in order to obtain a decision upon the question which the relator here presents, it should have made the local board a party to this writ. The authority to do so is found in the provision of the law that any person feeling aggrieved by the action of either board on either of the three grounds specified in section 250 may have a certiorari against the board complained of, to determine the justness of such complaint. And if the complaint is against both boards, then the certiorari must go to both. The provisions of section 45 which have been invoked as authority for bringing in this local board apply to instances where one seeks to review the work of the state board only. When it is sought to compare the work of the state board with that of the local board, and thus it becomes necessary to procure a writ against each, two proceedings are not necessary. One writ may be issued to both, but section 45 in no way controls its issuance, nor the return to the same.

Assuming, then, that the local board of assessors is a necessary party to this proceeding, the question is presented, what disposition should be made of this case? The relator having neglected to make such board a party, and objecting now that it be brought in, although, manifestly, until a return from it is received, no intelligent disposition of this case upon this question can be had, it seems to me that the orderly method of procedure requires a dismissal of the writ. I can see no propriety in allowing the local board to force itself into this proceeding against the opposition of this relator, and thus insist upon an inquiry that the relator has the clear right to abandon. If we are to assume that this inquiry is permissible under this statute, and that the local board is a necessary party to it, I conclude that the local board may move the court that either the writ be deemed abandoned as to this particular inquiry, or else that it be amended so as to run to both. The local board has an interest in the matter sufficient to warrant such a motion on its part, to the end that it may make return to so much of the relator's petition as requires a review of its work. But it has no right to the order from which this appeal is taken. That order should be reversed, and, unless the relator itself now asks to so amend the writ, it should be dismissed on application to the court below.