The Mercantile National Bank of the City of New York, Appellant, v. The Mayor, Aldermen and Commonalty of the City of New York et al., Respondents.

1. Tax — New York City — Power of Equity to Restrain Collection of Tax when no Remedy Exists at Law. While the provisions of the Consolidation Act (L. 1882, ch. 410, §§ 819–821, as amd. by L. 1885, ch. 311) for the review by certiorari of assessments made in the city of New York are exclusive, the common-law writ of certiorari for that purpose having been superseded thereby, and the statute affording relief only where an assessment is illegal or erroneous by reason of overvaluation, a court of equity has inherent power in a proper case to restrain the collection of the tax imposed upon grounds not provided for by the statute, and for which no relief can be had by certiorari; it is not its province, however, to interfere in a case where the grievance assigned does not relate to some question of fraud or of illegal discrimination or classification.

2. Assessment of National Bank Stock at Higher Ratio of Value than Real Estate — When Equity Will Not Restrain Collection of Tax. An action will not lie in equity to restrain the collection of a tax imposed upon the stock of a national banking association by the commissioners of taxes and assessments of the city of New York upon the sole ground that the stock was assessed at its actual value while the real estate of the city was assessed at not more than sixty per cent, thus creating an inequality of assessment, whereby the owners of such stock are required to pay an undue proportion of the taxes assessed for city, county and state purposes, although the grievance assigned is not one which, under the statute, can be reached by the writ of certiorari or for which there exists any remedy at law, where, in the absence of evidence to the contrary, it must be presumed that the taxing officers acted honestly and impartially in making the assessment, with no intention to discriminate to the injury of a class of persons or of a species of property, and the valuation as fixed by them was uniform with respect to each class of property.

Mercantile Nat. Bank v. Mayor, etc., of New York, 50 App. Div. 628, affirmed.

(Argued March 31, 1902; decided October 7, 1902.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered April 24, 1900, affirming a judgment in favor of defendants entered upon a dismissal of the complaint by the court at a Special Term.

This action, on the equity side of the court, is brought by the plaintiff, a banking institution organized under the National Banking Law, to restrain the municipality of the city of New York and its receiver of taxes from collecting a portion of the taxes imposed for the year 1896 upon the plaintiff's stockholders. The following facts are alleged in the complaint : The shares of the plaintiff's capital stock, being 10,000 in number, of the par value, each, of $100, are held by a large number of persons and corporations, resident in New York city and elsewhere, and the commissioners of taxes and assessments of that city had assessed the shareholders at the rate, or valuation, of $143 per share. Between the second Monday of January and the first day of May, 1896, when, pursuant to the statute, the books of annual record prepared by the assessing officers were open for inspection and correction, the plaintiff, in behalf of its shareholders, applied for a reduction of the assessed valuations of the shares to sixty-six and two-thirds per cent of the assessed value thereof, " in order to equalize the taxes of its stockholders with the taxes of other property on the same rolls." The plaintiff's application was denied ; the assessed valuations were duly confirmed by the commissioners, " except in those instances where the valuation was reduced by the allowance and deduction of the indebtedness of said stockholders ; " the board of aldermen duly fixed the rate of taxation for the year at $2.14 for each $100 of assessed valuation ; the assessment rolls were delivered to the receiver of taxes of the city, with the warrant for the collection thereof, and, subsequently, the plaintiff's stockholders were duly notified to make payments of the sums due from them accordingly. The total assessed valuation of real and personal estate in the city for municipal and state purposes, for the year 1896, was the sum of $2,106,484,905 ; of which $1,731,509,143 represented the assessed value of the real estate and $292,351,569, represented that of the personal estate, other than bank shares ; the assessed value of which latter property amounted to $82,624,193. It is alleged that the laws of the state require all property, real

and personal, liable to taxation, to be assessed at its actual value ; that " the real estate of said city, liable to taxation, was deliberately and intentionally assessed and taxed at not more than sixty per cent of the actual value thereof, * * * and the shares of stock of the plaintiff were deliberately and intentionally assessed for taxation and taxed at their full or actual value, after making the proper allowance for the real estate of the plaintiff ; " that, if the real estate had been assessed at its actual value, " the amount of taxes which the stockholders of the plaintiff would have been required to pay would not have exceeded sixty-five per cent of the amount of such taxes as actually levied and demanded as aforesaid." It is shown that the statute requires every bank, " to retain any dividend until the delivery to the collector of the tax roll and warrant of the current year and, within ten days after such delivery, to pay to such collector so much of such dividend as may be necessary to pay any unpaid taxes assessed on the stock upon which such dividend is declared," and that a lien is created upon the shares of stock until the payment of the tax. It is alleged that, upon the plaintiff's receipt of the bill for the taxes levied against its stockholders, it duly tendered to the receiver of taxes, on behalf of all of its stockholders, sixty-five percentum of the amount thereof and requested him to apply the same to the payment, pro rata, of the tax imposed ; that he refused to accept any sum less than the full amount of the bill ; that no portion of this tax upon the shares has been paid and that, unless they are restrained, the defendants will proceed to enforce the collection of the full amount of the taxes levied against the stockholders in the modes allowed by law, to the irreparable injury, not only of the said stockholders, but, also, of the plaintiff ; whose standing, credit and franchises will be affected. It is alleged that, if it "should pay the taxes so levied upon said unequal assessments out of moneys of its stockholders in its hands * * * the plaintiff would be subjected to a great multiplicity of suits, brought by its separate stockholders for so doing and, in any event, a great number of suits might be rendered necessary to adjust the rights

of all parties ; " that under the provisions of the New York City Consolidation Act, in force in 1896, the grounds of review of an assessment for taxation were " limited to the questions of illegality and overvaluation and no review could be had in the courts of the question of inequality of assessment ; " that the usual proceedings by certiorari are not available to the plaintiff, as " the sole grievance consists in the gross inequality of said assessments, whereby the stockholders of the plaintiff are called upon to pay an undue portion of the annual taxes for city, county and state purposes."

The defendants have demurred to this complaint, for insufficiency of facts to constitute a cause of action ; the demurrer has been sustained below by the Special Term and by the Appellate Division and leave was granted to the plaintiff by the latter court to appeal to this court.

*David Willcox, Silas B. Brownell, Willard Brown, Charles W. Wells* and *James W. M. Newlin* for appellant. Upon tendering the amount of taxes justly due, plaintiff was in position to sue in behalf of its stockholders to enjoin collection of the excess. (*Cummings* v. *Nat. Bank,* 101 U. S. 153 ; *Stanley* v. *Supervisors,* 121 U. S. 535 ; *N. P. Co.* v. *Clark,* 153 U. S. 252 ; *Taylor* v. *Louisville Co.,* 88 Fed. Rep. 350 ; 60 U. S. App. 166 ; *M. Bank* v. *Whitehead,* 105 Fed. Rep. 809.) The case is a proper one for equitable relief by injunction. (*Heywood* v. *Buffalo,* 14 N. Y. 534 ; *Hassan* v. *City of Rochester,* 67 N. Y. 528 ; *Dows* v. *City of Chicago,* 11 Wall. 108 ; *U. P. Co.* v. *Cheyenne,* 113 U. S. 516, 525, 526 ; *Ogden City* v. *Armstrong,* 168 U. S. 224 ; *Bank* v. *Stone,* 88 Fed. Rep. 383 ; 174 U. S. 799 ; *L. T. Co.* v. *Stone,* 107 Fed. Rep. 305 ; *U. & P. Bank* v. *Memphis,* 111 Fed. Rep. 561.) The action of the assessing officers is unauthorized by the act of Congress in the premises and violates the constitutional guaranties of the rights of property. (*O. Nat. Bank* v. *Owensboro,* 173 U. S. 664 ; *Taylor* v. *L. Co.,* 88 Fed. Rep. 350 ; *Virginia* v. *Rives,* 100 U. S. 313 ; *Chicago Co.* v. *Chicago,* 166 U. S. 226 ; *Abbott* v. *Tacoma,* 175 U. S. 413 ;

*C. Ry. Co.* v. *Guenther*, 19 Fed. Rep. 395; *D. M. Co.* v. *Parrish*, 24 Fed. Rep. 197; *Railroad Co.* v. *Board*, 85 Fed. Rep. 302; *Nashville Co.* v. *Taylor*, 86 Fed. Rep. 168; *M. T. Co.* v. *Collins Co.*, 99 Fed. Rep. 812; *Holden* v. *Hardy*, 169 U. S. 366.)

*George L. Rives, Corporation Counsel* (*Theodore Connoly, James M. Ward* and *David Rumsey* of counsel), for respondents. Neither the relator nor the stockholders have been injured by the action of the assessors in assessing personal property at its full value and real property at sixty per cent of its value. (*State R. R. Taxes*, 92 U. S. 575; *People ex rel.* v. *Barker*, 158 N. Y. 709; 31 App. Div. 315; 179 U. S. 279; *Nat. Bank* v. *Kimball*, 103 U. S. 732; *French* v. *B. A. P. Co.*, 181 U. S. 324; *Kelly* v. *Pittsburg*, 104 U. S. 78; *Stanley* v. *Bd. Suprs.*, 121 N. Y. 542; *M. Bank* v. *New York*, 121 U. S. 138; *People ex rel.* v. *Barker*, 155 N. Y. 330; *People ex rel.* v. *Dederick*, 161 N. Y. 195.) There was an adequate remedy at law — in that the assessment might have been reviewed by certiorari. (Code Civ. Pro. § 2120; *People ex rel.* v. *Feitner*, 41 App. Div. 544.) There was an adequate remedy at law — in that the board of taxes and assessments was a judicial body with authority to consider and remedy, upon the plaintiff's application, any inequality of assessment. (*People ex rel.* v. *Feitner*, 168 N. Y. 441; *Cummings* v. *Nat. Bank*, 101 U. S. 153; *Hayes* v. *Missouri*, 120 U. S. 68; *Barbier* v. *Connolly*, 113 U. S. 27; *Bowman* v. *St. Lewis*, 11 Otto, 22; *Walker* v. *Sauvinet*, 92 U. S. 93; *Albuquerque Bank* v. *Perea*, 147 U. S. 87; *People ex rel.* v. *Coleman*, 21 N. Y. S. R. 178; *Swift* v. *City of Poughkeepsie*, 67 N. Y. 511; *Bank of Comm.* v. *Mayor, etc.*, 43 N. Y. 148.)

GRAY, J. The material facts alleged in the complaint must be regarded as admitted, under the defendants' demurrer, and, the legal question, which, therefore, arises is whether the plaintiff is without remedy at law, and, if that be so, whether it has made out a case for equitable intervention by way of an

injunction restraining the defendants from collecting a portion of the tax levied against its stockholders. The Special Term decided the case upon the theory that the plaintiff had an adequate remedy at law, in a resort to the common-law writ of certiorari to review the action of the tax commissioners and "to have the valuation determined according to the rule and principle prescribed by the statute, or, if that should be impracticable, then according to some uniform rule or principle, which will result in substantial equality of the burden of taxation." The Appellate Division assigned no reasons in affirming the order of the Special Term.

I have grave doubt whether the common-law writ of certiorari would afford to the plaintiff an adequate remedy for the particular grievance assigned in its complaint, if the right to resort to it existed. The issuance of the writ was largely discretionary and its function was to bring up for review the record of the proceedings of tribunals, or boards, possessing a special, or limited, jurisdiction, for inquiry by the court into the questions whether the proceedings were with jurisdiction of the subject-matter and with regularity; that is to say, with due regard to individual rights in matters affecting their persons, or property. Did they keep within the boundaries prescribed by the statute law, or by well-settled principles of the common law, would be the question presented. It was not until the passage of the general act of 1880, (Chap. 269, Laws of 1880), that taxpayers were afforded an effective remedy against illegal, or erroneous, assessments by the writ of certiorari. Prior thereto, as the assessors were deemed to act judicially, the review of the courts was confined to questions of jurisdiction. (*People ex rel. Citizens' G. L. Co.* v. *Board of Assessors,* 39 N. Y. 81, 88; *People ex rel. Cook* v. *Board of Police,* Ib. 506; *People ex rel. Buffalo & S. L. R. R. Co.* v. *Fredericks,* 48 Barb. 173; affd., 48 N. Y. 70; *People ex rel. Manh. Ry. Co.* v. *Barker,* 152 ib. 417, 430.) In *People ex rel. Cook* v. *Board of Police, (supra),* Judge WOODRUFF, in his opinion, elaborately reviews the authorities and concludes that there were these

three classes, into which certiorari proceedings divided themselves : *First*, that of the common-law writ, brought to review the summary conviction of a person charged with crime, or offense in law ; *second*, that of the common-law writ, brought to review other proceedings of inferior tribunals, magistrates, or bodies of officers, under a special, or limited, jurisdiction, and, *third*, the statutory certiorari.   Speaking of the second class, he observed: " The decisions of this state seem to hold with much uniformity that none but jurisdictional questions can be considered." In that case, as in the later case of *People ex rel. Clapp* v. *Board of Police*, (72 N. Y. 415), where Judge ANDREWS wrote, the question related to the punishment of the relator by the board of police for an offense and it was held that, in such cases, the power to review extended to the consideration of the question whether there was any proof supporting the conviction. In *People ex rel. Manh. Ry. Co.* v. *Barker*, (*supra*), Judge VANN, having under consideration the act of 1880, and contrasting its provisions with those of the common-law writ, observes of the latter, that it " brings up the record for inquiry into jurisdiction and regularity and in criminal, or quasi criminal, cases, the evidence, also, to see whether, as matter of law, there was any proof which could warrant a conviction of the relator.   (Citing cases.)   The general statutory writ brings up both record and proceedings for examination, not only as to jurisdiction and method of procedure, but, also, to see whether there was a violation of any rule of law, or any competent proof of all the essential facts, or a preponderance of proof against the existence of any of those facts."   Thus, the common-law writ of certiorari, in bringing up for review the proceedings of the commissioners of taxes and assessments, which are, unquestionably, judicial in their nature, (*Barhyte* v. *Shepherd*, 35 N. Y. 238 ; *Buffalo & S. L. R. R. Co.* v. *Supervisors*, 48 ib. 93 ; *Stanley* v. *Supervisors*, 121 U. S. 535), would present questions relating to jurisdiction and to regularity and not to the merits of this controversy.   But, in my opinion, the common-law writ would be no longer available in

such cases. With the enactment of chapter 269, of the Laws of 1880, there was created a new and complete system for reviewing upon certiorari, and for thereby correcting, the errors of assessing officers. (*People ex rel. Wallkill Valley R. R. Co.* v. *Keator*, 101 N. Y. 610.) It rendered inapplicable the provisions of the Code of Civil Procedure, relating to the writ of certiorari (*People ex rel. Church of the Holy Communion* v. *Assessors*, 106 N. Y. 671; *Matter of Corwin*, 135 ib. 245), and resumed within itself the remedies available to a taxpayer aggrieved by the action of the assessing officers. What was discretionary at common law, now became a right. I think that that act became the only authority for the review of errors in assessments for purposes of taxation. It was entitled " An act to provide for the review and correction of illegal, erroneous, or unjust assessments." It authorized the issuance of a writ to review assessments for illegalities, the grounds of which are specified in the petition ; or which are alleged to be erroneous by reason of overvaluation, or to be unequal, "in that the assessment has been made at a higher proportionate valuation than other real or personal property on the same roll by the same officers." It appears to be conceded that this general statute would furnish but an inadequate remedy for the plaintiff's grievance. It is not claimed that the assessment of the plaintiff's stockholders was *illegal* in the technical, or statutory, sense ; inasmuch as the taxing officers had authority to proceed, and did proceed with regularity, and with all the forms prescribed by law, to their final determination. There was no invasion of the legal rights of the plaintiff, or of those of its stockholders, in the method of procedure for the imposition of the tax upon the shares of stock. A review upon the statutory ground of inequality would not reach the grievance asserted by the plaintiff ; because that grievance does not relate to any question of fact, but to the principle, or rule, which had been adopted in the adjustment of municipal taxation for 1896, and which is claimed to have been in violation of the rule prescribed in the Revised Statutes. The inequality

which, under the general act of 1880, is the subject of review, has reference to a case where the assessors have departed from the general rule, or ratio, of assessment in a particular case, to the taxpayer's injury, and where there have resulted unequal valuations of the same class of property, so that the complainant's property has been valued higher in proportion than other similar property on the same assessment roll. (*People ex rel. Warren* v. *Carter*, 109 N. Y. 576 ; *People ex rel. P. Mfg. Co.* v. *Moore*, 11 N. Y. State Reporter, 859.)    But, after the enactment of the general statute of 1880, in the system of taxation provided by the legislature for the city of New York, and which was embodied in the provisions of the New York City Consolidation Act, passed in 1882, the grounds of review by certiorari were still more locally restricted and, in my opinion, the right of the taxpayer to sue out the writ was limited to what the provisions of the Consolidation Act permitted.    Section 819 of the Consolidation Act authorized the commissioners of taxes and assessments, within periods of time mentioned, to increase, or to diminish, "the assessed valuation of any real or personal estate in said city, as in their judgment may be necessary for the equalization of taxation," etc.    Section 820 provided that "any person considering himself aggrieved by the assessed valuation of his real or personal estate may apply to the commissioners of taxes and assessments to have the same corrected."    Section 821 of the Consolidation Act, as originally enacted, read that " a certiorari to review or correct on the merits any decision or action of the commissioners under either of the two preceding sections shall be allowed by the Supreme Court or any judge thereof directed to the said commissioners on the petition of the party aggrieved."    It was amended in 1885, so as to read : " A certiorari to review or correct on the merits any decision or action of the commissioners, under either of the preceding sections, shall be allowed by the Supreme Court or any judge thereof, directed to the said commissioners on the petition of the party aggrieved, but only on the grounds, which must be specified in such petition, that the assessment is illegal, and

giving the particulars of the alleged illegality ; or is erroneous by reason of overvaluation." These provisions were comprehensive of the subject-matter of the right to review by certiorari an assessment made by the commissioners of taxes and assessments of New York city. The legislative intention is manifest, in the amendment of section 821, that the grounds specified for the issuance of the writ should be exclusive of all other grounds and I think that it provided the only rule which should govern. (See *Matter of N. Y. Institution for Deaf and Dumb*, 121 N. Y. 234.) Under it, it is obvious that the plaintiff could not obtain the redress, which it seeks for its grievance. It does not complain that the assessment is illegal. It complains that the assessment of the stockholders is unequal, as compared with that levied against real estate owners.

I think that the plaintiff's grievance is not one which can be reached by the writ of certiorari ; or for which there exists any remedy at law. That being so, is the grievance one as to which the court will be moved to exert its equitable power ? Though the right to the use of the writ of certiorari has been so limited by the statute as to be unavailing to the plaintiff's case, the right to appeal to the equitable power of the court may yet exist. That power remains, as it always must remain, inherent in the court, to be exercised in proper cases. That the plaintiff would have the right to invoke its exercise in behalf of its stockholders, I consider to be settled, upon reason, as upon authority. The provisions of the Tax Law, with respect to the collection of taxes assessed against stockholders of banks, in their requirement of the bank to retain, and to pay, from any dividend the tax upon the stock, and the responsible relations thereby created, seem to warrant the maintenance of a suit by the banking corporation in its representative capacity. But its right to do so has been distinctly held by the Supreme Court of the United States, in *Hills* v. *Exchange Bank*, (105 U. S. 319), and in *Cummings* v. *National Bank*, (101 ib. 153). In the latter case it was held, in language appropriate to the present plaintiff, that " in paying the

money it is acting in a fiduciary capacity as the agent of the stockholders, an agency created by the statute of the state. If it pays an unlawful tax assessed against its stockholders, they may resist the right of the bank to collect it from them. The bank, as a corporation, is not liable for the tax and occupies the position of a stakeholder, on whom the cost and trouble of the litigation should not fall. If it pays, it may be subjected to a separate suit by each shareholder. If it refuses, it must either withhold dividends and subject itself to litigation by doing so, or refuse to obey the laws and subject itself to suit by the state." It was, further, observed, that the bank " holds a trust relation, which authorizes a court of equity to see that it is protected in the exercise of the duties appertaining to it. To prevent multiplicity of suits, equity may interfere."

What then is the grievance, which the plaintiff asserts, in its appeal to the equitable power of the court in behalf of its stockholders for preventive relief ? It is that the commissioners of taxes and assessments of the city of New York have deliberately and intentionally assessed and taxed the real estate in the city, in 1896, at not more than sixty per cent of its actual value, while the shares of stock of the plaintiff have been deliberately and intentionally assessed and taxed at their full value ; thus creating an inequality of assessment, whereby the plaintiff's stockholders are called upon to pay an undue portion of the annual taxes for city, county and state purposes. In other words, the grievance amounts to this, that the assessment for taxation on personal estate is at a higher ratio of valuation, than upon real estate, within the city. There is no question of discrimination against national bank stock. The system of taxation as to that form of personal property is in harmony with the taxation of other personal property in the city. The provision of the National Banking Act authorizes the state legislature to determine the manner of taxing national bank stock, provided that such taxation "shall not be at a greater rate than is assessed upon other monied capital in the hands of individual citizens in such state" (U. S. R. S. § 5219),

and this is complied with in the legislative requirement that stockholders in state and national banks shall be assessed and taxed on the value of their shares of stock, which " shall be included in the valuation of their personal property," and " shall not be at a greater rate than  *  *  *  upon other moneyed capital in the hands of individual citizens." (Chap. 409, Laws of 1882, § 312.)

The complaint is founded upon the provision of the Revised Statutes of this state that " all real and personal estate liable to taxation shall be estimated and assessed by the assessors at its full and true value," etc., (1 R. S. 393, § 17) and upon the failure of the assessing officers to comply with that provision in assessing real estate.   This failure, of course, we must regard as admitted in the case to have been deliberate and intentional on the part of the officers charged by law with the duty of municipal assessments for purposes of taxation. The reasons for the official action complained of do not appear; but it is not alleged to have been fraudulent in any respect, or to have been impelled by a motive to do injustice, or with the purpose of discriminating to the injury of a class of persons, or of a species of property.   If the tax commissioners have refused to follow strictly the provision of the Revised Statutes, with respect to the valuation of the taxable real estate in the city, it does not follow that the general burden of taxation, as finally adjusted, has been laid unequally, or inequitably, upon the body of taxpayers.   The inequality, which is complained of, is one that is. incidental to a general plan of taxation.   That is to say, there is no complaint of inequality in the assessment of the taxable personal estate ; it is that the taxable real estate is assessed at a different ratio of valuation from that adopted as to personal estate.   I do not think that this is an inequality which can constitute a legal grievance ; as would be the case, if there had been an unequal valuation of property of the same class.   Underlying the governmental power of taxation for the raising of revenues is the principle, implied from the nature of our political institutions, that taxation should be equal, in the sense that there

shall be no discrimination against persons, nor any classification, which results in discrimination, and that the common burden shall be sustained by common contributions, regulated by some fixed general rule, which operates impartially. Is this a case where that principle has been violated? I think not. A general statutory rule has been disregarded by the assessors, in the exercise, presumably, of an honest and reasonable judgment, as nothing is charged to the contrary; but their action was impartial and with reference to the whole community. What discrimination was exercised was, solely, as to the basis of valuation for each of the two classes of property, into which all of the property of the community was divided. That there may be a different basis of valuation in the assesssment of real estate from that in the cases of personal estate is, indeed, intimated by the legislature, in the statutory provision above cited from, and, also, in that relating to the taxation of the capital stock of corporations that their real estate shall be deducted at its *assessed* value. (Chap. 409, Laws 1882, § 312; Tax Law of 1896, § 12.) I think we may, fairly, assume that the assessors were influenced by the consideration that an assessment of personal estate is subject to a deduction for the debts of its owner, while real estate is not, and that the latter form of property bears the greater proportion of taxes, for the reason that, unlike personal estate, it cannot be concealed. It is a fact of common knowledge and discussion, that a disproportionate share of the public burdens is thrown on certain kinds of property, because they are visible and tangible; while others are of a nature to elude vigilance. (*Commonwealth* v. *P. F. C. S. Bank,* 5 Allen, 428, 436.) Such considerations may well influence a board of assessing officers to assess real estate upon a different basis of valuation, in order to equalize the burdens of taxation. Equality is unattainable, and can never be but approximative.

Upon what principle will a court of equity interfere, in a case where the grievance relates to the determination of a political body, acting judicially within the sphere of its juris-

diction ?' Public policy is against the interference by injunction to restrain the collection of a tax, to the delay and detriment of the public business, (*Western R. R. Co.* v. *Nolan*, 48 N. Y. 513), and courts should be reluctant to grant such preventive relief, when they are unable to do complete justice by causing a new assessment upon just principles. A court of equity does not sit to enforce the laws of the state; nor will it sit in review of the judgment of a political body, whose judgment, in the assessment of property for taxation, has been honestly exercised. Nor will the collection of a tax be restrained, which is merely erroneous and not void. (See *Mooers* v. *Smedley*, 6 John. Ch. R. 28; *Livingston* v. *Hollenbeck*, 4 Barb. 9; *Van Rensselaer* v. *Kidd*, Ib. 19; *Heywood* v. *City of Buffalo*, 14 N. Y. 534.) In the system of taxation, which was created for the city of New York by the Consolidation Act of 1882, an official board was provided, with the amplest jurisdiction to hear complaints and with power to act upon appeals, in matters of assessments, as might seem necessary for the equalization of taxation. (Sec. 819.) This fact, together with the limitations upon the right to review by certiorari the decision, or action of the board, seem strongly to evidence a legislative intention that the scheme of assessment of the real and personal estate within the city, for purposes of taxation, should rest, finally, in the wisdom and discretion of the official body, to which it has been confided. How is the court to say that there has not been an equitable adjustment of the burden of taxation, under the rule adopted by the board of commissioners? When assessments for the purposes of taxation are made upon principles applicable alike to all the members of a community, there is substantial equality. If equality is equity, there is no inequity in a general scheme of assessment for taxation, which applies to the whole community and discriminates against no species of property. How the plaintiff's stockholders, in behalf of whom this suit is brought, are affected, individually, by the application of the rule of valuation adopted, we are not informed. They may have had the assessed valuations of their personal estate

reduced by the deduction of their indebtedness. The plaintiff's bank is treated like all other moneyed corporations and its stockholders have the same privileges as are possessed by other holders of personal property. (Chap. 409, Laws of 1882, § 312.) The inequality, of which complaint is made, is one that is general in its nature. If the plaintiff's attack were allowed to prevail, the whole assessment roll might be invalidated and serious embarrassment might be caused to governmental operations. I do not think that the exercise of the equitable power of the court can be invoked to accomplish the subversion of a general scheme of assessment and taxation, which has been adopted by the department of government constituted for the purpose.

The cases in the United States Supreme Court, to which our attention has been directed, as justifying the intervention of equity, do not conflict with these views. They differ in essential facts. Either they relate to the statutory conditions, which resulted in an injurious discrimination against a class of persons, or a species of property ; or to acts of assessors, having a clear purpose to discriminate against shares of bank stock. (*Stanley* v. *Supervisors*, 121 U. S. 535 ; *Cummings* v. *National Bank*, 101 ib. 153 ; *People* v. *Weaver*, 100 ib. 539.) Equity will go far to afford relief in cases of mistake ; or for the prevention of fraud ; or to secure to the citizen the equal protection of the laws ; but it is not its province to interfere with the collection of a tax, in a case where the grievance assigned does not relate to some question of fraud, or of illegal discrimination, or classification.

For the reasons stated, I advise the affirmance of the judgment appealed from, with costs.

PARKER, Ch. J., O'BRIEN, BARTLETT, HAIGHT, MARTIN and VANN, JJ., concur.

Judgment affirmed.