(63 Misc. Rep. 1.)

PEOPLE ex rel. NEW ENGLAND TELEGRAPH CO. v. WOODBURY et al.
(eight cases).

(Supreme Court, Special Term, Albany County. April, 1908.)

1. TAXATION (§ 459*)—SPECIAL FRANCHISES—REDUCTION OF VALUATION.
　　General Tax Law, § 42, added by Laws 1899, p. 1590, c. 712, § 2, makes it the duty of the State Board of Tax Commissioners to annually fix the valuation of each special franchise subject to assessment in each city,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

town, or tax district, and file the same with the clerk of the city or town where the franchise is taxable, whose duty it is to deliver a certified copy thereof to the local tax assessors. Section 21 (Laws 1896, p. 803, c. 908) requires local tax assessors, for the purpose of taxation, to place on taxable real estate a full valuation as fixed by themselves, and on special franchises the valuation fixed by the State Board of Tax Commissioners. *Held*, that the fact that the real estate in a city was assessed at only 80 per cent. of its full value does not entitle the owner of a special franchise in that city to a reduction of 20 per cent. on its full valuation as fixed by the State Board of Tax Commissioners.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 815; Dec. Dig. § 459.*]

2. TAXATION (§ 155*)—"SPECIAL FRANCHISE"—WHAT CONSTITUTES.

General Tax Law (Laws 1896, p. 796, c. 908) art. 1, § 2, subd. 3, as amended by Laws 1899, p. 1589, c. 712, § 1, provides that "a franchise right, authority or permission specified in this subdivision shall for the purpose of taxation be known as a 'special franchise.' A special franchise shall be deemed to include the value of the tangible property of a person, copartnership, association, or corporation situated in, upon, over or above any street, highway, public place or public waters in connection with the special franchise. The tangible property so included shall be taxed as a part of a special franchise." *Held*, that the rights and privileges granted to a telegraph company to construct and operate lines in and between the cities of the state constitute, for the purpose of taxation, a "special franchise."

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 275; Dec. Dig. § 155.*

For other definitions, see Words and Phrases, vol. 7, p. 6576.]

3. TAXATION (§ 454*)—REVIEW OF ASSESSMENTS—CERTIORARI.

General Tax Law, § 45, added by Laws 1899, p. 1592, c. 712, § 2, providing that "an assessment of a special franchise by the State Board of Tax Commissioners may be reviewed in the manner prescribed by article 11 of this chapter," which provides for review of assessments for taxation by proceedings in certiorari, in so far as equality of assessment is concerned, relates alone to assessments or valuations of different franchises, and does not relate to inequality of assessment of special franchises as compared with other kinds of property.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 810; Dec. Dig. § 454.*]

Eight separate proceedings by certiorari in the name of the People, on relation of the New England Telegraph Company and its predecessor, the Commercial Cable & Telegraph Company, against Egbert E. Woodbury, Frank E. Perley, and Benjamin E. Hall, as the State Board of Tax Commissioners, and the City of Rochester, to review assessments for taxation. Writs of certiorari quashed.

Henry G. Fritsche, for relator.
William W. Webb, Corp. Counsel, for defendant City of Rochester.
William Schuyler Jackson, Atty. Gen., for other defendants.

BETTS, J. This is a proceeding by certiorari on the part of the relator to review the amount of the valuation and assessment of its special franchise in the city of Rochester for the year 1907, and the other cases referred to are for the same purpose for prior years. In the year 1907 proceeding there is a stipulation on the part of the relator, the then Attorney General, for the Board of Tax Commission-

ers, and the corporation counsel of the city of Rochester, agreeing to certain facts for the purpose of this proceeding only. So far as material to this memorandum, such stipulated facts are as follows:

"Fourth. That the said State Board of Tax Commissioners in the year 1907 fixed and determined the valuation of the special franchise of relator in the city of Rochester at the sum of $12,000.

"Fifth. That the relator duly made objections before said State Board of Tax Commissioners that the valuation of its special franchise for such year was unequal, because real estate in said city was not assessed at its full value.

"Sixth. That the valuation of relator's special franchise in the city of Rochester, made by said State Board of Tax Commissioners, was at least the full value thereof.

"Seventh. That real estate in the city of Rochester was generally assessed and valued upon the assessment rolls of said city for the year 1907 at 80 per cent. of its full and true value."

Upon this agreed state of facts the relator asks the court to reduce its valuation or assessment of $12,000 by 20 per centum thereof, in order to conform to the assessment of real estate by the local board of assessors of the city of Rochester, which application is opposed by the Board of Tax Commissioners and the city of Rochester.

There seems to be no authoritative judicial determination of this question, although it has been much involved in judicial discussion. It is important, then, at the outset, to determine what are the respective duties of the board of assessors, that fixes the value of real estate in the city of Rochester, and the state board, that fixes the valuation of this special franchise for the purpose of assessment.

Section 21 of the tax law (Laws 1896, p. 803, c. 908), so far as essential to our purpose is as follows:

"Preparation of Assessment Roll.—They [assessors of the city of Rochester] shall prepare an assessment roll containing six separate columns, and shall, according to the best information in their power, set down: (1) In the first column the names of all the taxable persons in the tax district. (2) In the second column the quantity of real property taxable to each person, with a statement thereof in such form as the commissioners of taxes shall prescribe. (3) In the third column the full value of such real property. (4) In the fourth column the full value of all the taxable personal property owned by each person respectively after deducting the just debts owing by him. * * * (6) In the sixth column the value of the special franchise as fixed by the State Board of Tax Commissioners. * * *"

The oath or verification which the assessors, or a majority of them, are required by statute to make to said assessment roll is as follows:

"We, the undersigned, do severally depose and swear that we have set down in the foregoing assessment roll all the real estate situated in the tax district in which we are assessors, according to our best information, and that, with the exception of those cases in which the value of the said real estate has been changed by reason of proof produced before us, and with the exception of those cases in which the value of any special franchise has been fixed by the State Board of Tax Commissioners, we have estimated the value of the said real estate at the sums which a majority of the assessors have decided to be the full value thereof; and, also, that the said assessment roll contains a true statement of the aggregate amount of the taxable personal estate of each and every person named in such roll over and above the amount of debts due from such persons, respectively, and excluding such stocks as are otherwise taxable, and such other property as is exempt by law from taxation, at the full value thereof, according to our best judgment and belief. * * *"

It will thus be seen that as to real estate generally the board of assessors of the city of Rochester are required by law to assess it at its full value, and, further, that said assessors are not only required to assess such real property at its full value, but they are required to swear that they have so done.

Now let us see what is required to be done as to assessment of special franchises. Section 42 of the tax law added by Laws 1899, p. 1590, c. 712, § 2, so far as essential here, is as follows:

"Assessment of Special Franchises.—The State Board of Tax Commissioners shall annually fix and determine. the valuation of each special franchise subject to assessment in each city, town, or tax district. After the time fixed for hearing complaints the tax commissioners shall finally determine the valuation of the special franchises, and shall file with the clerk of the city or town in which said special franchise is assessed a written statement duly certified by the secretary of the board of the valuation of each special franchise assessed therein as finally fixed and determined by said board. Such statement of valuation shall be filed with the town clerk of the respective towns within thirty days next preceding the first day of July in each year, and with the clerks of cities of the state within thirty days before the date set opposite the name of each city in the following schedule: * * *

"Schedule of Dates for Filing of Assessments of Special Franchises.

| Name of City | Date. |
|---|---|
| Rochester | April first. |
| * * * * * * * * * | |
| Buffalo | December first. |

"Each city or town clerk shall, within five days after the receipt by him of the statement of assessment of a special franchise by the state board, deliver a copy of such statement certified by him to the assessors or other officers charged with the duty of making local assessments in each tax district in said city or town and to the assessors of villages and commissioners of highways within their respective towns and villages. The valuations of every special franchise as so fixed by the state board shall be entered by the assessors or other officers in the proper column of the assessment roll before the final revision and certification of such roll by them, and become part thereof with the same force and effect as if such assessment had been originally made by such assessor or other officer."

It thus appears that the State Board of Tax Commissioners are required to fix and determine the valuation of each special franchise, and that it is the duty of the local board of assessors to enter the same in the tax roll. The local assessors' duty as to special franchise assessments is a ministerial one, simply entering the amount fixed by the State Board of Tax Commissioners in the proper column of the assessment roll. People ex rel. Railroad Co. v. Priest, 169 N. Y. 436, 62 N. E. 567. The valuation herein referred to is, of course, the full value. It is not 80 per cent. of its value, nor is it anything in excess of its valuation; but it is what the State Board of Tax Commissioners honestly and conscientiously fix as the fair valuation of these franchises. So we have here two public boards charged by the statute with the performance of certain duties. It is admitted in this case that one, the State Board of Tax Commissioners, has performed its duties as directed to do by the statute. It is admitted that the other, the local board of assessors of the city of Rochester has not so done. The court is asked in this proceeding to direct that the State Board of Tax Commissioners shall, so far as this corporation is concerned, undo its

work in the city of Rochester and make its valuation conform to the valuation of another body of officials, the local board of assessors in Rochester, which concededly has not performed its statutory duty. Except for the fact that a practice has grown up to some extent permitting this to be done, it is doubtful if any court would be asked to take the action desired here.

The right is claimed for the relator to equalize with other real estate in said city of Rochester this valuation of its special franchise property in Rochester, for this, among other reasons: Because in article 1, § 2, subd. 3, of the tax law, the term "real estate," as included in that chapter (which is chapter 908, p. 796, of the Laws of 1896, as amended by Laws 1899, p. 1589, c. 712, § 1) is held to include special franchises, "including the value of all franchises, rights or permission to construct, maintain or operate the same in, under, above, on or through streets, highways, or public places. * * * A franchise, right, authority or permission specified in this subdivision shall for the purpose of taxation be known as a 'special franchise.' A special franchise shall be deemed to include the value of the tangible property of a person, copartnership, association or corporation situated in, upon, under or above any street, highway, public place or public waters in connection with the special franchise. The tangible property so included shall be taxed as a part of the special franchise." The Court of Appeals has considered this statute in People ex rel. Metropolitan Street Railway Company v. State Board of Tax Commissioners, 174 N. Y. 417–435, 67 N. E. 69, 72, 63 L. R. A. 884, 105 Am. St. Rep. 674, and in its opinion a "special franchise," in relation to a street railway, is defined as follows:

"When a right of way over a public street is granted to such a corporation, with leave to construct and operate a street railroad thereon, the privilege is known as a 'special franchise,' or the right to do something in the public highway which, except for the grant, would be a trespass."

The opinion is a very enlightening one on the subject I am discussing, and I quote from it at length, continuing from page 436 of 174 N. Y., page 72 of 67 N. E. (63 L. R. A. 884, 105 Am. St. Rep. 674):

"The statute, which is an amendment of the general tax law, declares, in substance, that the right, authority, or permission to construct, maintain, or operate some structure, intended for public use, 'in, under, above, on, or through streets, highways, or public places,' such as railroads, gas pipes, water mains, poles and wires for electric, telephone, and telegraph lines, and the like, is a special franchise. For the purpose of taxation such a franchise is made real estate and is 'deemed to include the value of the tangible property of a person, copartnership or corporation situated in, upon, under or above any street, highway, public place or public waters in connection with the special franchise and taxed as a part thereof.' Section 2, cl. 3. This includes nothing but what is in the street, directly or indirectly, and excludes power houses, depots, and all structures without the lines of the street. The taxes thus imposed are for general purposes, are collected in the same way, and used for the same objects as other taxes upon the general assessment roll. Prior to the passage of this act general franchises had been taxed for the benefit of the state, under a valuation made by a state officer, with the sanction of the courts. Laws 1896, pp. 856, 861, c. 908, §§ 182, 190; People ex rel. W. & H. Co. v. Roberts, 154 N. Y. 101, 47 N. E. 980. Special franchises, however, had never been lawfully assessed, either by local or state authority, but were made taxable property by the act before us for the first time in the history of the state. * * *

. "What was the situation that confronted the Legislature when it passed this statute to raise money for the support of government? The Governor had officially announced that 'the farmers, the market gardeners, and the mechanics and tradesmen having small holdings, are paying an improper and excessive proportion of the general taxes.' The Legislature wished to distribute this burden in a just and equitable manner, to take part of the load from those who carried more than their share, and to relieve the farms from some of the effects of depreciation in value through competition with the cheap and fertile lands of the West. It found property scattered all over the state, worth nearly $200,000,000, which was not taxed at all and had never been taxed. This property consisted wholly of special franchises, or privileges, given by the state, mainly to corporations furnishing to the public transportation, water, light, and other necessities or conveniences of daily life. It had grown rapidly in extent and value during recent years. Its value rested upon the right to use in some manner the public highways of the state; but it was intangible, and doubtless for this reason had never been brought under the taxing power. The Legislature also found certain tangible property, which was subject to taxation, situated in the public streets and used only in connection with and as a part of the intangible property, not taxed, and of no substantial value except when so used. It found that the valuation of this new kind of property, intangible, invisible, and elusive, but of great value, would be attended with peculiar difficulties, which would require a degree of knowledge and skill not possessed by local assessors, but belonging only to experts, who had long and carefully studied the subject of taxation in all its varied aspects. The problem was to place a just and adequate value upon a right capable of valuation, but which was unseen, without form or substance, and, as it were, the mere breath of the Legislature. It was a new problem that had never arisen before during the history of the state, and it was to be solved, not to meet local needs, but an exigency of state.

"How did the Legislature deal with this situation? It created a new system of taxation, brought within its range a new character of property, and assigned the duty of making the valuation to the State Board of Tax Commissioners, composed of tax experts already in office, whose sole duty related to the subject of taxation, in all its phases, throughout the entire state. It made the tax commissioners assessors of this new kind of property, known as 'special franchises,' clothed them with power to compel the owners to furnish under oath, in addition to a general report, containing many details, such information as they called for; authorized them to call upon the local assessors for all facts that they could furnish and to summon aid from all available sources; required them to give notice to the owner affected and an opportunity to be heard; and provided a remedy for review by the courts of every assessment as soon as it was filed. It commanded that all sums, in the nature of a tax, paid by the owner of a special franchise to a municipality for its exclusive use, should be deducted from the tax imposed for local purposes, and exempted the tangible property situated in public highways, and used in connection with the special franchise, from all other forms of taxation. Sections 2, 42, 43, 44, 45, 46. The new kind of property was termed 'real estate,' just as it might have been termed 'personal property,' or 'neutral property,' without changing its nature, which was such as local assessors had never dealt with.

"The statute should be considered in the light of the circumstances existing when it was passed, which were extraordinary and unprecedented. The system thus created had never been known before, and, as its main subject, the act dealt with special franchises, which had never been taxed before. Property unknown as the subject of taxation to the framers of any of our Constitutions was brought into the system, which required new methods of valuation and the exercise of functions which had never belonged to local assessors. The property was sui generis, and from its nature could not be valued by local officers. Unless it escaped taxation in the future, as it had in the past, it was necessary to commit the power to other officers, with new functions, wider experience, and greater opportunities for observation, who would be able to grasp the new scheme of taxation as a whole. We should not be misled by the terms 'valuation' or 'assessment' as the simple exercise of judgment, for

no work can be done without that, but should compare the intrinsic nature of the functions exercised by the local assessors for time out of mind with those intrusted to the State Tax Commissioners, which had never been committed to any board or officer before.

"The local assessors dealt with tangible property, which could be seen and was open to the judgment of ordinary men, or with written evidence of debts or contracts, the value of which could be easily computed. It was their habit to measure, weigh, and count; to learn the market value from current sales; to pass upon physical and material property which they were accustomed to own, rent, or use, and with which they were familiar in their daily life. They saw it, knew it, and could judge as to its value. It was before their eyes, and they could act upon it directly, without resort to complicated computations.

"On the other hand, the valuation of special franchises had never been attempted before, but presented a new field of action, and called for the exercise of new and different functions. They could not be seen, handled, measured, weighed, or counted. They were specialties, and had no market value. There were no sales to guide, and no experience from ownership, rental, or use to rely upon. The new property is real estate in name, but not in reality; for it is a mere privilege to do something in public streets and places not permitted to citizens generally. While local in a narrow sense, it is unconfined in its real nature; for it depends largely on the earning capacity of a going concern, frequently with several special franchises, but with no means of determining the amount earned by each. The value depends upon so many conditions, existing, frequently, in localities widely separated, and upon such a complication of facts and figures, that the valuation cannot be safely intrusted to men of common knowledge and experience. What greater calamity in the shape of taxation could threaten the vast interests involved than to intrust this important subject to unskilled and incompetent men, some of them willing, it may be, not only to protect their own localities at the expense of others, but to oppose corporations and favor individuals? The burden could not be distributed equally, for each local board would have its own method and theory. Uniform action would be impossible, and conflict and confusion would result. A wider view, a different kind of judgment, a balancing of localities and figures, an adjustment and equalization of burdens, and an exercise of functions not local in nature, were required to meet the situation. As we said in a recent case: 'It is no disparagement of the capacity and intelligence of the average assessor to say that it would present to him a problem incapable of accurate solution and a rule of action in the performance of his official duty impossible in practice.' * * *

"The special franchises of a railroad in operation from a city into suburban towns may be properly treated as an aggregation, without a precise situs, as one piece of property producing a gross income, as a single subject of valuation, like all the personal property of an individual, from one end of the line to the other, although the amount, when ascertained, must be apportioned and distributed among the several tax districts affected. Section 42. This can make no difference to the company, for it has only so much to pay in any event, and it shows that the work of valuation is not local, but general, in its character, and that it is a matter of central, rather than municipal, concern. It affects the general public, rather than the people of a community. The subject is one that local officers cannot handle, because they cannot consider it as a whole, by going without their precincts, but must stop at the boundaries of their several districts. They cannot make the distribution among localities interested in the special franchises."

What is said in this opinion in relation to railroads applies very well to the relator here, a telegraph company, which does business, not only in the city of Rochester, but in many other cities, towns, and counties of the state of New York. As we have seen by the decision quoted, the problem which confronted the Legislature was to make a uniform system of assessment of special franchises throughout the state, and in order to do this work it was intrusted to the State Board of Tax Com-

missioners, which might inquire in St. Lawrence and Erie and Suffolk counties, and the counties between, and adopt a rule uniform in all these several counties. Manifestly the assessors of the city of Rochester, with the large number of individual pieces of property to assess in that city, and with the limited time at their disposal, could undertake no such task.

The proposition here, however, is for the court to permit what the Legislature has decided should not be done; that is, to permit the Rochester board of assessors to reduce and regulate and control the assessment of the special franchises of this relator within the confines of that city. It will be noticed, too, that this power to regulate, which would be given by judicial authority to boards of assessors, would be a limited power, and would relate only to the reduction of assessments. If the owners of special franchises succeed in establishing such a rule of law as is here contended for, and the State Board of Tax Commissioners assess their property in the city of Albany at what the corporation considers 75 per cent. of its value, such an assessment would be undisturbed by the owner. On the other hand, if the State Board of Tax Commissioners assessed their property at a full and fair value in Rochester, and the local boards assessed the real estate at 80 per cent., the owners can obtain a reduction by the courts to correspond with the assessors' value; in other words, local boards of assessors will be given full authority to reduce the assessment of special franchises in the territory under their jurisdiction, but cannot increase it. See People ex rel. v. Priest, 181 N. Y. 300–305, 73 N. E. 1100, where it is held that local assessors can exercise no powers or judicial functions in the assessment or valuation of special franchises.

The Court of Appeals has held (Mercantile Nat. Bank v. City of New York, 172 N. Y. 35, 64 N. E. 756) that where the assessors had assessed bank stock (personal property) at full value, and where real estate on the same roll was assessed at not more than 60 per cent. of its value, certiorari would not lie to compel the equalization of the assessment of the bank stock with that of the real property, nor would equity intervene. The assessment of real property in the city of Rochester is subject to no deduction whatever. If a man owns a house and lot—that is, has the title to a house and lot—in the city of Rochester, he is, or should be, assessed by its assessors for the full value of that property. If the property is worth $4,000, and it is subject to a mortgage of $3,500, the owner must still, if the assessors do their duty, pay a tax upon the sum of $4,000. The taxes upon special franchises, however, are subject to various deductions by the statute. See section 46 of the tax law as to what those deductions are. No such deductions are known or permitted to the owner of the house and lot referred to, or the ordinary form of real property, so that equalizing special franchise valuations with the valuations of real estate as it appears upon the tax roll of Rochester according to the stipulation here would not work out equality. The special franchise owner would then pay a less tax according to valuation than would the owner of an ordinary piece of real estate.

The Court of Appeals, as we have seen, has held that this property—i. e., special franchises—is a new species of property so far as taxation

is concerned; that it is neither real nor personal, but partaking of the nature of both. We have seen that the statute requires and is satisfied by uniformity of taxation for the same kind or class of property, as of bank stock, as distinguished from real property. So it is immaterial into which of the two great classes of property, real or personal, this particular property is placed, as, if all owners of special franchises are treated alike, and assessed at full value, no injustice is done to the individual owners of special franchises.

In the struggle to keep from direct taxation, on account of its rapid growth, the state has lately been reaching out for different classes of property to tax, and adopting a new method of taxation, and diverting a portion of the revenues thus obtained from the locality where the property is situated into the coffers of the state. The courts have approved this procedure. A recent instance of this is the mortgage recording tax, by which an entirely different method has been adopted for reaching the owners of that class of personal property from that which before had obtained, and which now prevails for the greater amount of personal property, so that the owners of mortgages on real estate are now, for purposes of taxation, in a class by themselves. This property in a sense partakes of the nature of realty, because it is a lien on real property; but still it is classed as personalty. Special franchises are an intangible right connected with real estate, and the Legislature has simply designated this interest or right "real estate" for the purposes of taxation.

See the opinion of Mr. Justice Herrick in People ex rel. v. Priest, 41 Misc. Rep. 550, 85 N. Y. Supp. 237, holding that the court has no power to direct the State Board of Tax Commissioners to violate the law and assess property at 70 per cent. of its true value.

In Coulter v. Louisville & Nashville Railroad Company, 196 U. S. 599, 25 Sup. Ct. 342, 49 L. Ed. 615, it is held:

"It is not beyond the power of a state, so far as the federal Constitution is concerned, to tax the franchise of a corporation at a different rate from the tangible property in the state."

The point is also made by the city of Rochester and the State Board of Tax Commissioners that certiorari will not lie to equalize the values of special franchises fixed by the State Board of Tax Commissioners with that of ordinary real property fixed by the local assessors, for the reason that certiorari will only lie for inequality to review an assessment, on the ground that it is made "at a higher proportionate valuation than the assessment of other property on the same roll by the same officers." Article 11, § 250, Tax Law. This proceeding is brought under section 45 of the tax law, which, so far as material, is as follows:

"An assessment of a special franchise by the State Board of Tax Commissioners may be reviewed in the manner prescribed by article 11 of this chapter, and that article applies so far as practicable to such an assessment, in the same manner and with the same force and effect as if the assessment had been made by local assessors. * * *"

This relator claims that section 250 should not be restricted in its meaning by the court, and that such a construction should be given it as would permit of the maintenance of this proceeding, and that the

placing of the special franchise valuation on the assessment roll by the local boards of assessors is sufficient compliance with the statute to authorize the issuing of the writ.

Although I have preferred to place my decision on the broader ground that the claimed inequality is not in fact an inequality, still I think that this claim of the state tax board is correct, and that the review contemplated and provided for by section 45, so far as inequality of assessment is concerned, relates to assessments or valuations of different special franchises alone, and not its comparison with the assessments of any other kinds of property. But the principal reason for refusing to direct the state board to lower their assessment or valuation to correspond to that of the local assessors is that the state board has complied with the law and the local assessors have not, and courts should not, and I think on examination will not, compel such a board to do violence to its conscience by returning as correct a valuation it does not believe to be correct; nor will the court sustain the action of an assessing board which has not complied with the law and reverse the action of a board that has complied with it.

It follows that the several writs of certiorari should be quashed, with costs.