[No. 9005.    Department One.    November 10, 1910.]

DOTY LUMBER & SHINGLE COMPANY *et al.*, *Appellants*, v. LEWIS COUNTY *et al.*, *Respondents.*[1]

TAXATION—ASSESSMENT—REVIEW. The action of the board of equalization in raising an assessment on timber that has been cruised, on notice to owners given, cannot be reversed or set aside where the board did not act fraudulently or arbitrarily, but in good faith considered the distance of the property from railroads or logging streams, the contour of the land, and quality of the timber.

TAXATION—ASSESSMENT—LOWER RATE ON OTHER PROPERTY. The assessment of the property of others at a lower rate than that of a complaining taxpayer, whose property is not assessed beyond its cash value, does not invalidate the tax.

TAXATION — ASSESSMENT — OMISSION OF PROPERTY — MISTAKE OF LAW. The failure of the assessor to assess money, on the erroneous advice of the attorney general who was mistaken as to the law, does not affect the validity of a tax upon other property.

TAXATION—ASSESSMENT—EQUALIZATION—OMISSION OF PROPERTY. The failure of the board of equalization to raise the assessment on timber uncruised or where no notice could be given to the owners, does not prevent a raise on cruised timber on notice to the owners and a hearing.

Appeal from judgments of the superior court for Lewis county, Rice, J., entered December 10, 1909, in favor of the defendants, after a hearing on the merits before the court without a jury, dismissing actions to enjoin the collection of taxes.    Affirmed.

*Forney & Ponder*, for appellants.

*J. R. Buxton* and *J. E. Frost*, for respondents.

[1]Reported in 111 Pac. 562.

Gose, J.—These are consolidated causes, tendering certain sums as taxes, and seeking injunctive relief as to all taxes in excess of the sums tendered. The charge in each of the bills is that the board of equalization, in pursuance of a fraudulent scheme on the part of the county commissioners, raised the assessment against the timber lands of the several plaintiffs. After issue joined and a full hearing on the merits, the court found that the charge of fraud had no foundation in fact or law, and dismissed the bills. The plaintiffs have appealed.

It appears from the record that in April, 1907, the board of commissioners, being of the opinion that the timber lands of the county were not bearing their just proportion of the burdens of government, appointed a head timber cruiser with authority to appoint "cruisers sufficient in number to complete the cruise of the timber lands in the county at as early a date as to him [the head cruiser] may seem practicable." In obedience to his directions, he employed and kept in the field from eight to twenty-three cruisers from that time until the meeting of the board of equalization in August, following. When the board of equalization met in August, 1907, about one-third of the timber lands of the county had been cruised, and notice of intention to raise the assessments had been mailed to the owners of such land. The board proceeded to equalize the assessment upon all the cruised lands where it had been able to serve notice upon the owner. Upon the land not cruised and upon the cruised land, where it had not been able to serve notice, it took no action. The commissioners, before the meeting of the board of equalization, tentatively established as bases of value seventy-five cents per thousand feet on all first-class timber within four miles of a commercial railroad, fifty cents per thousand feet beyond the four miles and within the limits of ten miles of such road, and twenty-five cents per thousand feet beyond the limits of ten miles, with proper deductions for timber of a lower class. The appellants had a hearing before the board of equalization.

In raising the assessment upon the timber lands of the several appellants after the hearing, the tentative bases were not strictly adhered to, but the board took into consideration the distance of the property from a logging stream or a commercial railroad, and the contour of the land as affecting the expense of getting the timber to market.    In short, it fixed values on the basis of the quality of the timber and its accessibility to market.    The timber, including the land upon which it stood, was equalized at from one-fourth to one-third of its value.    Farming land and town property were assessed at about one-fourth of their value, and no change was made respecting their assessment by the board of equalization.    Acting upon the advice of the attorney general of the state, money was not assessed.    The detail sheets returned by the cruisers show the distance the land lies from the nearest railroad and logging stream respectively, the grade and kind of timber, and the character and contour of the land.

The appellants contend that the tentative bases of value were arbitrary and capricious; that their land is assessed at its full value; that other land in the county is assessed at not to exceed one-fourth of its value; that money was not assessed at all; and that the resultant acts of the board of equalization are fraudulent and void as to the taxes in excess of the assessment returned by the assessor.    These several positions are variously stated and argued in the briefs, but we do not think the record bears out the charge that the board acted either arbitrarily or fraudulently.    On the other hand, the evidence is convincing that the appellants had a full and fair hearing before the board of equalization, and that it and the commissioners acted in the utmost good faith. It is said, however, that the board acted on a fundamentally wrong principle in establishing the limits of four and ten miles as bases of value, and that the resultant acts are therefore void.    *Hersey v. Board of Supervisors of Baron County,*

37 Wis. 75, is cited as supporting the contention. In that case a fixed value was put upon standing timber within the limits established, without reference to logging conditions, the quality of the timber, or the character of the soil. There is a marked divergence in the opinions of the respective witnesses as to the value of the timber land, but the law put the burden upon the appellants, and the trial court who saw and heard the witnesses concluded that they failed to meet the burden, and we are inclined to take the same view. The board of equalization is the tribunal created by law to determine and equalize the values of property, and it is only when it acts arbitrarily or fraudulently that courts of equity will ·control its action. *Edison Elec. Ill. Co. v. Spokane County*, 22 Wash. 168, 60 Pac. 132; *Templeton v. Pierce County*, 25 Wash. 377, 65 Pac. 553; *Union Pac. R. Co. v. Pierce County*, 55 Wash. 108, 104 Pac. 178.

Laws of 1907, pages 239, 240, 241 (Rem. & Bal. Code, § 9200), provides that the county commissioners, the county assessor, and the county treasurer, or a majority of them, shall form a board of equalization; that they shall meet annually on the first Monday in August of each year, examine and compare the returns of the assessment of the property of the county, and proceed to equalize the same so that each tract of real property shall be assessed at "its true and fair value," and that after giving at least five days' written notice to the owner or agent of the property, they shall raise the valuation of each tract of real property which in their opinion is returned below its true and fair value, to such price or sum as they believe to be "the true and fair value thereof." A like provision is made for personal property.

The assessment of the property of others at a lower proportion of its value than that of a complaining taxpayer, which is not assessed at more than its fair cash value as required by law, does not make the tax invalid unless the assessment was fraudulently made. *Keokuk & Hamilton*

*Bridge Co. v. People*, 161 Ill. 514, 44 N. E. 206; *Engelke v.
Schlenker*, 75 Tex. 559, 12 S. W. 999; *Albuquerque Bank v.
Perea*, 147 U. S. 87; *Mercantile Nat. Bank v. New York*, 172
N. Y. 35, 64 N. E. 756; *State v. Cudahy Packing Co.*, 103
Minn. 419, 115 N. W. 645, 1039; *Chicago B. & Q. R. Co. v.
Babcock*, 204 U. S. 589; *Coulter v. Louisville & N. R. Co.*,
196 U. S. 599.

In *Keokuk & Hamilton Bridge Co. v. People*, the court
said that the complainant's property was assessed at one-
half its fair cash value, whilst the evidence showed that other
property in the township was assessed at one-third its fair
cash value.   The court recognized the principle that the
overvaluation may be so excessive and made under such cir-
cumstances as to create the presumption of fraud, but con-
cluded upon the facts that there was neither actual nor con-
structive fraud shown, and refused to grant relief.   In the
*Albuquerque Bank* case it was held that the fact that the
plaintiff's property was assessed at eighty-five per cent of
its full value, whilst other property was assessed at seventy
per cent of its value, was not ground for equitable inter-
ference.   The court said:

"The law of New Mexico requires property to be assessed
at its cash value.   Confessedly, this plaintiff's property was
assessed at fifteen per cent below that value.   Surely, upon
the mere fact that other property happened to be assessed at
thirty per cent below the value, when this did not come from
any design or systematic effort on the part of the county
officials, and when the plaintiff has had a hearing as to the
correct valuation, on appeal before the board of equalization,
the proper tribunal for review, it cannot be that it can come
into a court of equity for an injunction."

The board had before it satisfactory evidence of the value,
quality, and quantity of timber upon each piece of land, the
character and contour of the land itself, the distance of the
timber from logging streams and commercial railroads, and
the general logging conditions, and from this evidence, sup-

plemented by the knowledge of its members who were under
oath to do their duty, it acted as it saw the light; and even
if it be conceded that it made mistakes, they were honest
mistakes, and afford no ground for interfering with its judg-
ment.

At the trial it was stipulated that about two million dollars
on deposit in the banks was not assessed in 1907.   The ap-
pellants contend that the failure to assess it invalidates the
assessment.   As we have said, the assessor was advised by
the attorney general of the state that money was exempt from
taxation under Laws 1907, pages 67, 70.   This statute has
since been construed to be unconstitutional in so far as it
attempts to exempt money from taxation.  *State ex rel.
Wolfe v. Parmenter*, 50 Wash. 164, 96 Pac. 1047.   The omis-
sion of the assessor to assess property, under a misappre-
hension of the law, will not invalidate the assessment list.   It
is the same in legal effect as the casual omission of property
through a mistake.    *People v. McCreery*, 34 Cal. 432;
*Dunham v. Chicago*, 55 Ill. 357; *B. & M. R. Co. v. Seward
County*, 10 Neb. 211, 4 N. W. 1016; *Auditor General v.
Sage Land & Imp. Co.*, 129 Mich. 182, 88 N. W. 468, 56
L. R. A. 105.   Discussing this question in *Weeks v. Milwau-
kee*, 10 Wis. *242, 264, the court aptly observes:

"The execution of these laws is necessarily entrusted to men,
and men fallible, liable to frequent mistakes of fact and
errors of judgment.   If such errors on the part of those
who are attempting in good faith to perform their duties
should vitiate the whole tax, no tax could ever be collected.
And therefore, though they sometimes increase improperly
the burdens of those paying taxes, that part of the rule
which holds the tax not thereby avoided, is absolutely es-
sential to a continuation of government."

The same principle applies to the uncruised land.   It is
obvious that any action upon the part of the board without
information upon the facts would have been arbitrary and
capricious, and it is equally apparent that any action by the

board raising the assessment upon the cruised lands, where it had not been able to get notice to the owners, would have been a nullity.

The judgment is affirmed.

RUDKIN, C. J., FULLERTON, PARKER, and MOUNT, JJ., concur.